F. E. McGILLICK v. W. B. CHAPMAN, et al.

184 So. 26.
Opinion Filed October 12, 1938.
Rehearing Denied November 7, 1938.

*Hoffman & Robinson,* for Appellant;
*W. O. Bozeman,* for Appellees.

WHITFIELD, P. J.—In proceedings begun June 2, 1937, to foreclose a mortgage upon described real estate, it is alleged that on December 18, 1928, the defendant husband and wife executed a note and mortgage for $4,400.00 payable in three years after date at 8% per annum interest payable quarterly, with 8% per annum interest on deferred interest payments, after maturity payable quarterly. Interest payment and other covenants were defaulted in December, 1930, and thereafter. Other parties claiming some interest in the property were made defendants. The prayer demanded all unpaid covenants.

By answer the mortgagors in effect averred usury in that only $4,000.00 was loaned and the note and mortgage for $4,400.00 and 8% per annum interest thereon for three years would exceed the $4,000.00 loaned and 10% per annum interest thereon for three years, and constituted usury for which the statute provides that:

"When said usurious interest is taken or reserved, or has

been paid, then in that event the person * * * who has taken or reserved, or has been paid, * * * such usurious interest shall forfeit to the party from whom such usurious interest has been reserved, taken or exacted in any way, double the amount of interest so reserved, taken or exacted." Sect. 6938-9 C. G. L.

The court so decreed on the pleading and the evidence. Plaintiff appealed.

The master made an excellent report of the evidence; and after concluding on the evidence that "the transaction was usurious," the master stated his conclusions of law were controlled by the decisions in Chandler v. Kendrick, 108 Fla. 450, 146 So. 551, and Corsentina v. McPherson, 111 Fla. 616, 150 So. 509; and that he construed the cited cases to "hold that in order to work a forfeiture under the usury statutes where the terms of the loan have been proposed and held out by the borrower as an inducement to bring about the making of the loan, the lender must not only have known that the rate of interest exceeded 10% per annum but must also have had actual knowledge that the charging of that rate of interest was prohibited by and in violation of law. The theory of the majority opinions seems to be that the question is not whether the law has been violated, but is whether the lender knew he was violating it and intended to do so. The majority opinions appear to take the position that presumptive knowledge of the law is not sufficient in such transactions, and that unless the lender, in addition to presumptive knowledge of the law, also had actual knowledge that his act was prohibited and proceeded with knowledge of the prohibition, the violation was not wilful, hence he should not be penalized."

The master also stated: "While I cannot subscribe to the correctness of this view, I am bound by it"; and because of his construction of the cited opinions and decisions,

he reported that no forfeitures should be decreed, but that upon equitable grounds the principal sum loaned of $4000.00 with 8% per annum interest thereon payable quarterly with like interest on deferred interest payments after maturity should be awarded, together with insurance premiums, taxes and abstract of title paid by plaintiff mortgagee with interest thereon at 8% per annum and a reasonable attorney's fee in the foreclosure.

The construction put upon the two cited cases by the master is not in accord with the meaning and intent of the opinions of this court.

In the Chandler case, *supra,* the court found on the evidence held that the lender, an unsophisticated woodsman, never intended to charge the borrower, a banker, the excess amount of $250.00 included in the note and mortgage, and that he never claimed more than the $7,250.00 actually loaned; that the terms of the contract originated with the banker borrower; and that the amounts paid by the lender to the borrower for extensions were voluntary payments to the lender to compensate the lender "for his trouble and expense in arranging the extensions," and were not charged for the use of the actual amount loaned to the banker borrower. The decree awarding the amount loaned with 8% interest thereon was affirmed on the evidence.

In the Corsentina case, *supra,* "the master in chancery found from the evidence that the alleged usurious device relied on as a ground for forfeiture of the complainant's rights, was a plan which was the creation of the defendant and his agents, and practiced by defendant upon complainant whom defendant knew might be interested, in purchasing a mortgage at a large discount. The master also found that when complainant agreed to purchase the mortgage being foreclosed by him, that he was not advised of the usurious scheme which had been devised to get the

money by making the mortgage a dummy mortgage for an amount vastly in excess of the principal and then selling it to complainant at a large discount in the principal amount. The master's findings were sustained by the Chancellor, who entered his decree in accordance therewith," Corsentina v. McPherson, 111 Fla. 616, 150 So. 609. The decree was affirmed. See also Jones v. Hammock, 179 Fla. 674, 179 So. 671.

The master's report was excepted to and the exceptions sustained. In this case the agent of the borrower who was well known to the lender, a banker and business man, initiated the negotiations for the loan, but the lender was fully aware of all the proceedings. He wrote the agent of the borrower:

"I will take the mortgage upon your recommendation. As I understand, I give $4,000.00, the mortgage to be $4,400.00 for three years, interest payable quarterly at 8%."

"Interest to start with time of my check, and papers dated accordingly."

The lender was a resident of Pittsburgh, Pennsylvania.

The entire amounts called for by the note and mortgage were claimed in the foreclosure proceedings. After usury appeared the plaintiff lender sought to justify upon the theory that he did not know of the Florida usury statutes. The legal presumption that he did know or should have known of the laws of the jurisdiction of the mortgaged *res* is not effectively rebutted by anything in the record.

This case is in its facts essentially different from those cited by the master, and requires the application of the usury statute.

A violation of the usury statute should be determined on the evidence duly adduced in each case.

In this case the lender of money secured by a mortgage upon real estate in Florida was an experienced banker and

business man whose occupation in another State justifies an assumption that he knew the States had usury laws; and as he was lending money secured by real estate in Florida, it was incumbent upon him to inform himself of the Florida usury laws. His assertion that he did not know of the Florida usury law does not relieve him of being charged in law with notice of such laws.

The borrower also is held to know of the usury laws of Florida, but this alone will not excuse the lender from taking notice of such laws. There is no evidence of deception or misleading conduct by the borrower in soliciting the loan.

The Court sustained exceptions to the master's report and decreed a forfeiture to the borrower of double the $400.00 excess in the note over the amount actually loaned and double the interest actually paid on the loan, which two amounts so forfeited were deducted from the amount actually loaned. The borrower was decreed to pay the lender the amounts paid by the lender for insurance premiums, costs of abstract of title for foreclosure purposes and taxes paid by the lender upon the mortgaged property with 8% interest thereon, together with $250.00 as a reasonable attorney fee for foreclosing the mortgage as covenanted in the mortgage. This accorded with the law and the evidence. Carr v. Cole, 119 Fla. 260, 161 So. 392; Maxwell v. Smith, 119 Fla. 389, 161 So. 566, and cases cited; Ceraolo v. Smith, 112 Fla. 399, 150 So. 611; Ross v. Atlas Finance Corp., 113 Fla. 793, 152 So. 410.

The decree is affirmed.

ELLIS, C. J., and TERRELL, BROWN and BUFORD, J. J., concur.

CHAPMAN, J., dissents.

CHAPMAN, J. (dissenting).—The law controlling the subject matter of the litigation here is well settled. The dif-

ference of opinion arises in the application of the settled principles of law to the facts as have been established. It appears that it would be harsh or severe to apply such a penalty to the mortgagee as shown by the terms of the decree appealed from. While the mortgagee, at the time the loan was negotiated, resided in the State of Pennsylvania and depended upon his agent or attorneys to close the loan, the law presumes the mortgagee here knew the Florida law and all the penalties about usury. I am not satisfied from the facts of the case that the mortgagee intended to charge the $400.00 in question, because he was indifferent as to making the loan and the mortgagor was deeply interested in obtaining the loan and voluntarily made the proposal as accepted by the mortgagee. It has not been made clearly to appear by the evidence that the mortgagee, during the time the loan was being negotiated, knew that the offered terms or bonus were usurious, but obtained the information several months after the loan was made. I think the decree appealed from should be reversed.