CONNER AIR LINES, INC. and F. A. Conner, Appellants,

v.

AVIATION CREDIT CORPORATION, L. B. Smith Aircraft Corporation and L. B. Smith, Appellees.

AVIATION CREDIT CORPORATION, Appellant,

v.

CONNER AIR LINES, INC., F. A. Conner and Joseph G. Moretti, Appellees.

No. 18071.

United States Court of Appeals
Fifth Circuit.

June 30, 1960.

Rehearing Denied Aug. 12, 1960.

Robert V. Smith, Washington, D. C., Laurence A. Schroeder, Miami, Fla., Robert P. Smith, Washington, D. C., John H. Wahl, Jr., Miami, Fla., for Aviation Credit Corp., L. B. Smith Aircraft Corp. and L. B. Smith; Smith, Ristig & Smith, Washington, D. C., Walton, Lantaff, Schroeder, Atkins, Carson & Wahl, Miami, Fla., of counsel.

Don G. Nicholson, Miami, Fla., for Conner Air Lines, Inc. and F. A. Conner.

Before CAMERON, JONES and BROWN, Circuit Judges.

JONES, Circuit Judge.

Conner Air Lines owned a DC-6 aircraft which had been outfitted for and used as a cargo carrier. Conner Air Lines, herein called Conner, desired to convert the plane into a passenger carrier. It negotiated with a number of firms for specified interior work and among the proposals was one from L. B. Smith Aircraft Corporation, herein called Smith Aircraft. Other work, in addition to that included in the initial proposal, was necessary, and 100 seats had to be purchased. Conner was without funds to cover the costs of making the conversion of the aircraft from the one type of use to the other. F. A. Conner, the president and dominant personality of Conner Air Lines, discussed his problem with L. B. Smith who, in addition to being the president of Smith Aircraft, was president of Aviation Credit Corporation, herein called Aviation Credit.

Smith was the guiding genius of both of these corporations. As a result of these discussions a contract was made between Conner and Aviation Credit by which the latter undertook to advance some working capital funds to Conner, to discharge a substantial amount of Conner's existing indebtedness, and to pay for rehabilitation work on the aircraft in an amount up to, but not exceeding, $150,-000. It was agreed that Conner would give Aviation Credit a bill of sale for the aircraft, and Aviation Credit would make a conditional sale contract by which Conner would reacquire title to the aircraft upon payment of $505,140.92, in accordance with the terms of a promissory note in that amount given to Aviation Credit by Conner and payable in installments over a thirty-two month period. The amount of the note was the aggregate of Aviation Credit's commitments with interest included at 11.58% computed on reducing balances. It was expressed in the agreement that Conner would be credited with any sums not advanced or expended by Aviation Credit to or for Conner. The bill of sale, conditional sale contract and promissory note were executed and delivered on November 23, 1956. F. A. Conner individually guaranteed the payment of the note.

At or about the time of the financing arrangement made with Aviation Credit by Conner, the latter entered into a contract with Smith Aircraft for specified work to be done at the agreed price of $150,000. Before February 23, 1957, the date when the first installment payable by Conner to Aviation Credit became due, a supplemental arrangement was worked out under which Smith Aircraft would do additional work on the Conner plane for stated sums. Conner agreed to increase the amount which it had previously agreed to pay for portions of the work which Smith Aircraft had undertaken to do by its original contract. It was claimed by Smith Aircraft that this additional amount was an adjustment made to offset charges incurred by it caused by failures and delays in performance by Conner of its contract promises.

Conner asserted that the additional amount was a financing bonus. Aviation Credit agreed to finance the revised deal between Conner and Smith Aircraft and to extend the first four installments. A supplemental agreement was executed and an additional note was given and interest at the rate of 11.58% was included in the amount.

Conner defaulted in its payments to Smith Aircraft. The United States attached the aircraft for the lien of taxes claimed to be owing by Conner. Smith Aircraft was required to make disbursements for insurance, maintenance costs and to prevent the repossession of radio equipment installed on the aircraft. Aviation Credit gave notice of an intention to repossess the aircraft under the terms of its so-called conditional sale contract and brought suit for a declaration that it was the owner of the aircraft and that Conner had no interest therein. While the suit was pending Smith Aircraft, by amendment, prayed for foreclosure in the event the conditional sale contract should be held to be a mortgage. Conner and F. A. Conner individually asserted that the agreements had been procured through the fraud of Smith Aircraft and Aviation Credit and that usury had been exacted. A mortgage lien was asserted by F. A. Conner, and another by Joseph G. Moretti. The United States asserted its claims for taxes. Testimony was taken over a period of six days.

The district court held that the bill of sale, the conditional sale contract, and the supplemental instruments constituted a mortgage under the provisions of a Florida statute.[1] It was found that, although Smith Aircraft and Aviation Credit were separate legal entities with different managing officers, they were both under the control and domination of L. B. Smith who, in all material matters, acted for these corporations in the transactions with Conner. The control and relationship was such, as found the district court, that all information on the part of one was information on the part of the other. Of the amounts included in the renegotiated and supplemental agreement, the court found that $33,310.-18 was a bonus, and that the bonus added to the interest computed at the 11.58% rate and included in the notes resulted in a charge exceeding the permissive 15% rate and hence constituted usury under the Florida law. The court found that Aviation Credit had advanced $459,-083.58, exclusive of the bonus payment. It was found that Aviation Credit had advanced $9,703.99 for the preservation, maintenance and protection of the res. The court held Aviation Credit was entitled to recover this amount with interest at the statutory rate of 6%. It was concluded by the court that Aviation Credit was entitled to recover for the sums actually advanced, without interest or bonus, and less twice the sum of said bonus. It was held that Aviation Credit should be awarded an attorney's fee of $15,000, with the court expressing the opinion that "this charge is reduced from the normal because of the overcharge demands." The court's findings and conclusions were followed by a decree of foreclosure and sale.

Aviation Credit has appealed. It asserts that the bonus, so called, was not a financing bonus but a renegotiation of a contract between Smith Aircraft and Conner under which Smith Aircraft would otherwise have sustained a loss. It contends that the two corporations,

1. "All conveyances, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages.

"Provided however, that no such conveyance shall be deemed or held to be a mortgage, as against a bona fide purchaser or mortgagee, for value without notice, holding under the grantee." Fla. Stat.Ann. § 697.01.

related though they were through the domination of L. B. Smith, were nevertheless separate, and a sum contracted for as a profit by one should not be credited to the other as a usurious exaction. Aviation Credit contends that, assuming there was usury, the court misapplied the Florida usury statute in the imposition of the penalty. Finally, it is said the appellant was entitled to, but was not allowed, a reasonable attorney's fee. Conner and F. A. Conner individually, take an appeal and assert that the amount of the penalty for usury as found and imposed by the court was less than the Florida statutory provision requires.

A Florida statute[2] passed in 1925 prohibited corporations from interposing the defense of usury. This provision was repealed[3] in 1953, and the defense of usury then became available to corporations as well as to individuals. Sodi, Inc. v. Salitan, Fla., 68 So.2d 882.

The transaction which was found by the district court to make a usurious transaction was the inclusion of the item of $33,310.18 in the supplementary agreement. The appellant urges that this sum, which Conner agreed to pay, was a profit to Smith Aircraft for work done and to be done by it, and that even though the profit be unreasonable it does not follow that it should be treated as usury so far as Aviation Credit is concerned. Authorities are cited showing it to be the law of Florida that the difference between a cash price offered and a credit price agreed upon is not to be regarded as interest so as to invoke the application of the law against usury. Dillon v. J. W. Walter Co., Fla.App., 98 So.2d 391. But here our problem is not that simple. When the supplemental agreement was made Smith Aircraft had performed a part of the work it had undertaken to do and it was obligated to perform the rest. There was to be a forbearance by Aviation Credit of the then maturing installments of Conner's indebtedness. Other financing was undertaken. Smith Aircraft and Aviation Credit were both represented by L. B. Smith and there is no doubt but that he was authorized to speak for both. The district court found that the $33,310.18 was to be paid as a financing bonus. We cannot say that the facts do not admit of this inference or that the finding is erroneous.

Where there is an intent on the part of a lender to make a loan or to extend a maturity for a greater profit than is permitted by law, the transaction is tainted with usury even though it is cast in a form which was designed to give it a cloak of apparent legality. Courts do not permit the use of design or device to evade the purpose of the usury laws. Griffin v. Kelly, Fla., 92 So.2d 515; Beacham v. Carr, 122 Fla. 736; 166 So. 456. The amount of a bonus exacted in connection with financing will be regarded as interest in determining whether the usury law has been violated, and this is true whether the bonus inures to the benefit of the lender, the agent of the lender, or to the benefit of another. Speier v. Monnah Park Block Co., Fla., 84 So.2d 697; Stoutamire v. North Florida Loan Association, 152 Fla. 321, 11 So.2d 570; Richter Jewelry Co. v. Schweinert, 125 Fla. 199, 169 So. 750; Hopkins v. Otto, 118 Fla. 865, 160 So. 203. The fact that Smith Aircraft and Aviation Credit are separate corporate entities does not prevent the financing bonus from being treated as a usurious exaction in view of the relationship, through L. B. Smith, of the two companies.

In computing the amount which Smith Aviation is entitled to recover, the district court took the amount of the advances made pursuant to the agreement, excluding the bonus, added the amounts paid out for preservation, maintenance and protection with interest on this latter amount. The aggregate of these items was $469,266.52. The district court, in its findings and conclusions, sometimes referred to the $33,310.18 item as a bonus and at other times as an

2. Laws of Fla. Acts of 1925, Ch. 10096.

3. Laws of Fla. Acts of 1953, Ch. 28170, F.S.A. § 608.01 et seq.

overcharge. In the decree the court directed that twice the amount of the $33,310.18 item be deducted. This deduction is asserted by the appellants to be unauthorized by the law of Florida.

Two sections of the Florida statutes require our consideration. These are:

"Unlawful rates of interest defined; proviso.—It shall be usury and unlawful for any person, or for any agent, officer or other representative or any person, to reserve, charge or take for any loan, or for any advance of money, or for forbearance to enforce the collection of any sum of money, except upon an obligation of a corporation, a rate of interest greater than ten per cent per annum, either directly or indirectly, by way of commission for advances, discounts, exchange, or by any contract, contrivance or device whatever, whereby the debtor is required or obligated to pay a sum of money greater than the actual principal sum received, together with interest at the rate of ten per cent; and such transactions with a corporation shall, whereby the corporation pays interest, be usury and unlawful if for a rate of interest greater than fifteen per cent per annum. The provisions of this section shall not apply to sales of bonds in excess of one hundred dollars and mortgages securing the same, or money loaned on bonds." Fla.Stat. Ann. § 687.03.

"Penalty for usury; not to apply to transferee of negotiable paper unless usury appears on face.—Any person, or agent, officer or other representative of any person, willfully violating the provisions of § 687.03 shall forfeit the entire interest so charged, or contracted to be charged or reserved, and only the actual principal sum of such usurious contract can be enforced in any court in this state, either at law or in equity; and when said usurious interest is taken or reserved, or has been paid, then and in that event the person, who has taken or reserved, or has been paid, either directly or indirectly, such usurious interest, shall forfeit to the party from whom such usurious interest has been reserved, taken or exacted in any way, double the amount of interest so reserved, taken or exacted; provided, however, that this shall not apply to a bona fide endorsee or transferee of negotiable paper purchased before maturity, unless the usurious character should appear upon its face, or that the said endorsee or transferee shall have had actual notice of the same before the purchase of such paper, but in such event double the amount of such usurious interest may be recovered after payment, by action against the party originally exacting the same, in any court of competent jurisdiction in this state, together with an attorney's fee, as provided in § 687.06." Fla.Stat.Ann. § 687.04.

■■■ If it is correct to say that the $33,310.18 was taken or reserved, or has been paid by Conner, then the imposition by the court of double the amount of the usurious bonus from the true principal was proper. If there was not any payment, or any taking or reserving of usurious interest, then the full amount of the principal, without interest, may be recovered. Wilson v. Conner, 106 Fla. 6, 142 So. 606; Ross v. Atlas Finance Corporation, 113 Fla. 793, 152 So. 410; Mc-Gillick v. Chapman, 134 Fla. 220, 184 So. 26. Where other instruments are executed contemporaneously with a mortgage and as a part of the same transaction, the mortgage may be modified by the other instruments, and all documents are to be read together in order to determine and give effect to the intention of the parties. 59 C.J.S. Mortgages § 156, 208; Jackson v. Parker, 153 Fla. 622, 15 So.2d 451; Brumick v. Morris, 131 Fla. 46, 178 So. 564; Morrow v. Commonwealth Life Insurance Co., 118 Fla. 371, 159 So. 525. The effect of the transactions between Conner, Smith Aircraft and Aviation Credit, was to have conver-

sion and rehabilitation work done by Smith Aircraft on the DC-6 plane of Conner and to provide that payments for this work and other payments and advances for other purposes of Conner should thereafter be made by Aviation Credit and be secured by a lien on the Conner aircraft. These arrangements resulted in a mortgage to secure future advances. Such security transactions are recognized and enforced in Florida.[4] It may be parenthetically noted that there is no question now present in this case as to lien priorities. Cf. United States v. American National Bank, 5 Cir., 1958, 255 F.2d 504, certiorari denied 358 U.S. 835, 79 S.Ct. 58, 3 L.Ed. 2d 72, rehearing denied 359 U.S. 1006, 79 S.Ct. 1135, 3 L.Ed.2d 1034. The advances by Aviation Credit were made over a period of about fourteen months.

■ The provision for the forfeiture of double the amount of the interest exists only if the usurious interest has been paid or has been taken or reserved. Certainly Conner did not pay the so-called bonus to Aviation Credit. Was it otherwise paid, taken or reserved? It was not, unless it can be said that a paying, taking or reserving resulted from the transfer of the amount of the bonus from Aviation Credit to Smith Aircraft. The undertaking of Conner to pay Aviation Credit the $33,310.18 constituted usury, but only because of the relationship between the two Smith corporations. By reason of that same relationship we are precluded from saying that the transfer by one of them to the other is the paying, taking or reserving of the usurious bonus. Because of the relationship, it follows that the situation is no different than if Conner had agreed to pay, but did not pay, the sum to Aviation Credit as additional interest or as a financing bonus. The interjection of the related company, Smith Aircraft, into the arrangement does not change the effect of what was done in so far as concerns the payment by Conner, or the taking or reserving by Smith Aircraft, of the bonus.

Hence we reach the conclusion that it was error to determine, as the district court determined, that the bonus of $33,-310.18 was paid or taken or reserved.

■ Smith Aviation appeals from that portion of the court's decree fixing the amount of attorneys' fees awarded to it. In its finding the district court said, "It is the court's opinion that a reasonable attorneys' fee to be awarded to the plaintiff and as against the defendant in this case should be the sum of $15,000.00, this charge is reduced from the normal because of the overcharge demands." It is apparent that the court's phrase "overcharge demands" has reference to the usurious financing bonus of $33,310.18. The statute relating to usury fixes the forfeitures for usury. Where a mortgagee is entitled to foreclose and the mortgage provides for attorneys' fees, the presence of usury will not prevent the recovery of a reasonable attorneys' fee. Purvis v. Frink, 57 Fla. 519, 49 So. 1023; Skinner v. Southern Home Building & Loan Association, 46 Fla. 547, 35 So. 67. While equitable considerations may be a factor in the determination of a reasonable attorneys' fee, there should not be a reduction from what would otherwise be reasonable because of conduct for which a specific statutory penalty has been provided and imposed. The amount of a reasonable attorneys' fee to be awarded to Smith Aviation should be reconsidered in the light of what we have here said and decided.

■ By its appeal, Conner urges that the court should have taken the face of the notes, deducted the amount found to be the true principal and treated the difference as usurious interest reserved by Smith Aircraft. This contention is pretty well disposed of, we think, by what we have heretofore said. It has already been resolved that the transaction was one creating a mortgage to secure future advances. The agreement between Conner and Aviation Credit expressly provided that the stated principal

4. Fla.Stat.Ann. § 697.04.

sum should be credited by any sums included therein which were not advanced by Aviation Credit or expended by it on behalf of Conner. We think the contentions made by the appeal of Conner are without merit.

The conclusions here reached are that Aviation Credit is entitled to recover the principal of its advances to or for Conner pursuant to their agreement which the district court has found to be $459,083.-58, the amount paid for the preservation, maintenance and protection of the aircraft with interest on such payments, a reasonable attorneys' fee to be determined without diminution because of the usurious aspects of the transactions, and appropriate costs, including costs on this appeal. To carry out the conclusions here reached the judgment of the district court is reversed and the cause is remanded.

Reversed and remanded.